IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHNNY C. PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1895-RJD |
| | ) | |
| DR. STEPHEN RITZ and WEXFORD HEALTH SOURCES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Johnny C. Parker filed this action pursuant to 42 USC §1983, alleging Defendants Wexford Health Sources, Inc. ("Wexford")[1] and Dr. Stephen Ritz violated his Eighth Amendment rights while he was incarcerated at Menard Correctional Center.[2] Plaintiff's Complaint was screened pursuant to 28 U.S.C. 1915A and he proceeded on one Eighth Amendment claim against Defendants for their alleged deliberate indifference to a cyst on Plaintiff's right testicle. This matter is now before the Court on the Motion for Summary Judgment filed by Defendants Wexford Health Sources, Inc. ("Wexford") and Dr. Stephen Ritz (Docs. 114 and 120).[3] As explained further, Defendants' Motion is DENIED.

**Factual Background**

On January 16, 2016, Plaintiff reported to a nurse at Menard Correctional Center

---

[1] Wexford contracts with the Illinois Department of Corrections to provide medical care to inmates.
[2] Approximately nine months after Plaintiff filed suit, he transferred from Menard Correctional Center to Lake County Jail (Doc. 57).

("Menard") that he had a painful knot on his right testicle (Doc. 115-1, p. 17).[4]  According to the nurse's note, Plaintiff reported that the pain started in 2008 and Plaintiff described it as "throbbing" and "constant" (*Id.*).  The nurse referred Plaintiff to an MD and gave him Ibuprofen (*Id.*). Plaintiff saw Dr. John Trost on February 3, 2016 (*Id.*, p. 19).  Dr. Trost prescribed Ibuprofen for Plaintiff's pain and referred Plaintiff to collegial review for an ultrasound (*Id.*).[5]  Plaintiff received approval for the ultrasound, which was performed on February 19, 2016 (*Id.*, p. 20).  The radiologist's impression was "a 1.4 cm right epididymal head cyst." (*Id.*, p. 155).

Following the February 2016 ultrasound, Plaintiff did not seek treatment for the cyst until October 11, 2016 when he reported to a nurse that he had stabbing, constant pain in his right testicle (*Id.*, p. 29).  Three days later, a nurse practitioner saw Plaintiff and made a referral to collegial review for a urology consultation (*Id.*, p. 30).  According to the nurse practitioner's note, Plaintiff reported that his pain increased in the previous three months, sometimes impeding his urine stream (*Id.*).  Dr. Ritz denied the urology consultation request. (*Id.*, p. 31).  Plaintiff's alternative treatment plan included antibiotics and a urinalysis. (*Id.*, p. 99).

In January 2017, Plaintiff requested a follow-up appointment for his cyst (*Id.*, p. 38). Plaintiff saw a nurse practitioner who noted "f/u with Dr. Trost-regarding ? testicular cyst" (*Id.*, p. 39).  On February 8, 2017, Plaintiff saw Dr. Trost and reported the testicular cyst caused him anxiety and discomfort (*Id.*, p. 44).  Dr. Trost presented Plaintiff's case to collegial for a urology consult (*Id.*, p. 45).  Dr. Ritz denied the referral (*Id.*).  After a repeat ultrasound, Plaintiff's case could be presented again to collegial if the ultrasound results were positive "or at Dr. Trost's

---

[4] It appears that the nurse wrote "1/16/15" on this record, but the parties all agree that these events occurred on January 16, *2016* (Doc. 120, p. 2, ¶1; Doc. 117, p.2).
[5] The "collegial review" process involves the inmate's treating physician submitting a request for an inmate to receive certain treatment for which approval is needed before the physician can order it (Doc. 115-3, p. 41).

discretion" (*Id*., p. 100).

On March 29, 2017, Plaintiff reported to health care staff that his testicular pain restricted his ability to lie down in certain positions (*Id*., p. 46). Dr. Mohammed Siddiqui saw Plaintiff on April 3, 2017 and noted "painful (right) testicular mass…had previous ultrasound…referral to urology (testicular lesion)" (*Id*., p. 47). The next day, Plaintiff underwent a repeat ultrasound which revealed a stable epididymal cyst (*Id*., p. 156). On April 10, 2017, Dr. Ritz denied Dr. Siddiqui's referral for a urology consult (*Id*., p. 103). Plaintiff's proposed alternative treatment plan consisted of long-acting NSAIDs (non-steroidal anti-inflammatory medication), monitoring on site, and a recommendation for supportive underwear (*Id*.). On May 4, 2017, Dr. Siddiqui appealed the denial, noting that Plaintiff received "no relief from NSAIDs" (*Id*., p. 48). Dr. Ritz denied the appeal (*Id*., p. 106). The written notice of the denial stated, "Dr. Ritz would like [Plaintiff] to continue wearing supportive underwear (no boxers), continue taking long-acting NSAID and be monitored on-site" (*Id*., p. 107).

Plaintiff submitted a grievance at Menard on May 19, 2017 that stated he suffered from an unbearably painful cyst on his scrotum (Doc. 117-1, p. 8). Plaintiff described the pain as "unbearable" and it felt like "somebody squeezing my scrotum" (*Id*., p. 8-9). The grievance officer denied the grievance as "moot," noting that she was advised by the "HCU" (health care unit) that Dr. Siddiqui intended to re-submit Plaintiff's referral for a urology consult to collegial review on July 20, 2017 (*Id*., p. 7).

On July 20, 2017, Dr. Siddiqui again presented Plaintiff's request for a urology consult to collegial review and Dr. Ritz once again denied it (Doc. 115-1, p. 110). Plaintiff received an alternative treatment plan to "continue on-site conservative measures" (*Id*., p. 109, 110). Plaintiff did not seek or receive treatment for his cyst from July 2017 until September 2018. On September

2, 2018, Plaintiff reported to the health care unit for testicular pain (*Id.*, p. 79). Plaintiff was referred to collegial for a repeat ultrasound, which was approved (*Id.*, p. 80). On September 18, 2018, an ultrasound revealed the cyst was unchanged (*Id.*, p. 113).

Plaintiff filed this lawsuit on October 10, 2018. He also filed a motion for preliminary injunction, which the Court granted in part and denied in part, ordering Defendants to refer Plaintiff to a urologist (Doc. 44). Plaintiff saw Dr. Zackary Smith on April 30, 2019. Dr. Smith made the following note:

> I had a long conversation with the patient regarding his situation. I explained that cyst removal will likely improve his pain, however, it is always possible that it does not improve his pain. He would have to accept this risk if he desired treatment. I would recommend surgical excision as opposed to percutaneous drainage as this would give him more durable response. Risks benefits, and rationale behind this approach were reviewed. He strongly desires treatment so we will schedule him for right epididymal cyst excision in the near future (Doc. 117-2, p. 38).

Plaintiff underwent surgery, and no longer has testicular pain (Doc. 117-3, p. 34).

**Summary Judgment Standard**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Plaintiff alleges that Dr. Ritz and Wexford violated his Eighth Amendment right to be free from cruel and unusual punishment. The Supreme Court recognizes that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail in his claim against Dr. Ritz, Plaintiff must establish first that his testicular pain was "objectively, sufficiently serious" and second, that Dr. Ritz "acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). For Wexford to be liable, Plaintiff must demonstrate that a Wexford policy caused the deprivation of his Eighth Amendment right. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).

A medical condition is objectively serious if, *inter alia*, it causes "chronic and substantial pain," or if it "significantly affects an individual's daily activities." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008). In their Motion for Summary Judgment, Defendants do not address whether Plaintiff's testicular cyst and pain were objectively serious. Instead, they argue that no factfinder could conclude Dr. Ritz acted with a sufficiently culpable state of mind. Defendants further argue that Plaintiff failed to provide evidence of a policy that caused the deprivation of his Eighth Amendment rights to support his claim against Wexford.

### *Dr. Ritz*

The Court is not persuaded by Defendant's argument that no reasonable factfinder could conclude Dr. Ritz was deliberately indifferent to Plaintiff's testicular pain. Persisting in an ineffective course of treatment may constitute deliberate indifference. *Greeno,* 414 F.3d at 655; *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"). As the undersigned noted in the Report & Recommendation on Plaintiff's Motion for Preliminary Injunction, Plaintiff's medical records support a reasonable inference that Dr. Ritz persisted with recommendations for conservative, ineffective treatment for Plaintiff's testicular pain (e.g., NSAIDs).

Defendants argue that Plaintiff's medical records indicate that Plaintiff did not take the long-acting NSAIDs recommended by Dr. Ritz and therefore the efficacy of the conservative treatment could not be determined, even though Dr. Siddiqui noted that NSAIDs provided Plaintiff no relief.  Defendants cite Plaintiff's medical records for their argument that "it does not appear" Plaintiff took the NSAIDs, but the Court cannot determine conclusively from the cited records whether Plaintiff took the NSAIDs. Defendants did not include this issue in their Statement of Material Facts, and it is clear to the Court that the efficacy of the NSAIDs is in dispute.

Two doctors and one nurse practitioner requested a urology consult for Plaintiff. Every time such a referral was suggested to Dr. Ritz, he denied it.  The Court acknowledges that simply because medical professionals disagree on the appropriate treatment for an inmate's medical condition does not mean that one of the professionals is acting with deliberate indifference.  *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir.

2001) (*citing Estate of Cole by Pardue v. Fromm*, 94 F.3d 254 (7th Cir. 1996). Here, however, Plaintiff reported that his testicular pain and discomfort persisted despite Dr. Ritz's alternative treatment plan. The medical professionals who examined Plaintiff persisted with their efforts to refer him to a urologist. Dr. Ritz persisted in his refusal to approve the urology consult. Summary judgment in favor of Dr. Ritz is not warranted.

### *Wexford*

To prevail in his §1983 claim against Wexford, Plaintiff must establish that his Eighth Amendment right to be free from cruel and unusual punishment was violated by 1) Wexford's express policy; 2) Wexford's "widespread and persistent practice that amounted to a custom approaching the force of law"; or 3) a Wexford "official with final policymaking authority." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (*citing Monell*, 436 U.S. at 690-91*; Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). Defendants contend in their Motion for Summary Judgment that no evidence suggests Plaintiff's Eighth Amendment right was violated, and therefore Wexford is entitled to summary judgment. As explained above, this argument fails-a factfinder could determine Dr. Ritz was deliberately indifferent to Plaintiff's testicular pain.

Defendants then argue that no evidence suggests that when Dr. Ritz denied the referrals for Plaintiff to see a urologist, he was acting pursuant to an express Wexford policy or a widespread and persistent practice. Plaintiff points the Court to a provision in the contract between Wexford and the Illinois Department of Corrections ("IDOC") that states Wexford shall "aggressively manage all offsite services for appropriate utilization and cost effectiveness" (Doc. 115-5, p. 83, 89-90). Dr. Ritz testified that "aggressive" is

a subjective term and his decisions denying Plaintiff's referrals for a urology consult were based on the information he learned from the medical records and his "20-plus years of primary medical care experience." (*Id.*, p. 90).  Comparing Dr. Ritz's testimony to the medical records that demonstrate Plaintiff's complaints of unalleviated pain and recommendations for a urology consult by Plaintiff's treating physicians, a reasonable jury could infer that Dr. Ritz reviewed Plaintiff's medical records, considered those records in light of his medical experience, and still "aggressively" managed offsite services by denying Plaintiff a urology consult in violation of the Eighth Amendment.

Defendants then argue that the provision that states Wexford will "aggressively manage all offsite services for appropriate utilization and for cost effectiveness" is not an express Wexford policy, but rather a contractual obligation.   This argument is nonsensical.  Certainly Wexford *agreed* to "aggressively manage all offsite services… for cost effectiveness" since this provision is found in a *contract* and a contract, by definition, contains provisions that were agreed upon by the parties.  *See, e.g., Natl. Production Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011) (explaining that an enforceable contract does not exist without mutual assent).

The "aggressive" management provision does not, by itself, violate the Eighth Amendment because (as Dr. Ritz testified), it is unclear from the record what Wexford is supposed to do to "aggressively" manage costs related to offsite services.  For example, are Wexford staff members who intentionally look for specialists with offices close to the prisons (to reduce prisoner transportation expenses) "aggressively" managing the cost of providing offsite services to inmates?  The policy (and the record) are unclear.  Because the policy is not, on its face, unconstitutional, Plaintiff must produce evidence to allow a

Page **8** of **11**

reasonable jury to find that the policy "is used in a widespread or systemic way to violate constitutional rights." *Howell,* 987 F.3d at 659.

Plaintiff contends that his own medical history is sufficient for a jury to infer that "Wexford had a widespread practice of denying patients constitutionally adequate care until they sue successfully to get it." Plaintiff correctly notes that there are no "bright-line" rules "regarding the quality, quantity, or frequency of conduct needed to prove a widespread custom or practice." *Howell,* 987 F.3d at 654 (*quoting Thomas v. Cook Cty Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)). Plaintiff must provide evidence from which a jury could reasonably infer that "a series of violations" occurred, not "isolated acts of misconduct." *Id*. (internal citations omitted).

Here, two physicians and one nurse practitioner presented Plaintiff's testicular pain to Dr. Ritz a total of six times (including twice on appeal) over the course of nine months, and each time Dr. Ritz denied Plaintiff a urology consult. It was not until Plaintiff filed this suit and a motion for preliminary injunction that he was able to see a urologist. These facts make this case distinguishable from other Seventh Circuit case law in which the plaintiff's own experiences did not provide sufficient evidence of a pattern or series of violations.

For example, in *Howell*, the "policy" at issue was simply the process of collegial review. *Id*. at 659. Plaintiff Howell tore his anterior cruciate ligament ("ACL") and lateral meniscus cartilage playing basketball at Menard. *Id*. at 651. After approval in collegial review, Howell was examined and treated by an offsite orthopedic surgeon who ultimately performed surgery to repair Howell's meniscal tear but recommended against surgery to repair the ACL "until it became absolutely necessary." *Id*. at 651. Over the

next twenty months, Howell's physician at Menard submitted multiple requests to collegial review for additional treatment (MRI, additional appointments with outside specialists, and ACL repair surgery); some of those requests were denied, some were approved. *Id*. at 651-52. Ultimately, Howell's ACL surgery was approved in collegial review. *Id*. at 651. The Seventh Circuit determined that Howell failed to present evidence that a Wexford policy caused an unconstitutional delay of his ACL surgery. In its decision, the Seventh Circuit found that the offsite orthopedic surgeon's opinion to delay the surgery was "vital[ly] important", because it established "that decisions about how best to treat Howell's knee were based on medical judgment." *Id*. at 660.

In this case, it is not simply the collegial review process that is at issue. After all, Plaintiff was approved for multiple ultrasounds through the collegial review process. The issue is whether Dr. Ritz was "aggressively" managing offsite referrals in violation of the Eighth Amendment. Given the recommendations and notes of Plaintiff's treating physicians (e.g., Dr. Siddiqui's note that NSAIDs were not managing plaintiff's pain), a reasonable jury could infer that when Dr. Ritz denied Plaintiff a urology consultation six times, he was not making a sound medical decision but instead was "aggressively" managing offsite referrals according to a provision in Wexford's contract with IDOC in violation of the Eighth Amendment.

In another recent Seventh Circuit opinion, the plaintiff inmate alleged that over a 19-month period, his prescription for a medication needed to treat Parkinson's disease lapsed three times. *Hildreth v. Butler*, 960 F.3d 420, 423 (7th Cir. 2020). Three instances over a 19-month period were insufficient to establish a widespread practice or custom, when all three instances occurred to only one inmate. *Id*. at 427. This Court recognizes

Page **10** of **11**

that six instances in nine months is not *substantially* more than three instances in 19 months, and Plaintiff presented no evidence regarding the denial of treatment to other inmates. Significant to this case, however, is the presence of an express policy (to "aggressive[ly] manage offsite referrals for utilization management and cost effectiveness") viewed in light of specific decisions made by Dr. Ritz to deny offsite treatment for Plaintiff's testicular pain. This case lacks the randomness of the incidents in *Hildreth*. Consequently, whether Wexford's policy violated Plaintiff's Eighth Amendment right is a question for the jury.

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 114) is DENIED.

**IT IS SO ORDERED.**

**DATED:   May 4, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**